# EXHIBIT A

Case 1:17-cv-11042-RGS   Document 1-2   Filed 06/07/17   Page 1 of 19

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                                              SUPERIOR COURT

| | |
|---|---|
| MARGARET LEE, On Behalf of Herself and All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 17-1278 |
| CONAGRA FOODS, INC., ROCHE BROS. SUPERMARKETS, INC., ROCHE BROS. INC., ROCHE BROS. SUPERMARKETS, LLC and THE STOP & SHOP SUPERMARKET COMPANY LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Margaret Lee alleges for her complaint the following.

### Preliminary Statement

1. Plaintiff brings this action on behalf of herself and all others similarly situated to obtain monetary and other appropriate relief for herself and members of the Class (defined below) as a result of the unlawful acts of Defendants.

2. Defendant ConAgra Foods, Inc. ("ConAgra") manufactures and distributes packaged food products, including Wesson brand cooking oils such as Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil and Wesson Best Blend ("Wesson Oil"). Defendants Roche Bros. Supermarkets, Inc., Roche Bros. Inc., Roche Bros. Supermarkets, LLC (collectively, "Roche Bros.") and The Stop & Shop Supermarket Company LLC ("Stop & Shop") sell Wesson Oil in stores. Plaintiff purchased bottles of Wesson Oil that were manufactured by ConAgra and sold by

1

Roche Bros. and Stop & Shop at stores in Massachusetts. The label on the front of the bottles of Wesson Oil represented that it was "Pure & 100% Natural." Contrary to the representations in large print on the front of the bottle, however, the product contained unnatural ingredients and therefore it was not "100% Natural."

3. Specifically, Wesson Oil is made from plants, the DNA of which had been deliberately altered by the forced introduction of DNA from other species. The plants therefore had specific traits, such as resistance to certain herbicides, which they do not possess in nature or through traditional cross-breeding methods. Plants and other life forms that are products of this process of unnatural DNA alteration are commonly referred to as genetically modified organisms, or "GMOs." Accordingly, contrary to Defendants' representations, Wesson Oil is not "100% Natural."

4. Defendants have thus been misrepresenting Wesson Oil and deceiving their customers, including Plaintiff and numerous other consumers. Defendants have injured Plaintiff and other consumers in Massachusetts by inducing them to purchase and consume unnatural products with GMOs on the false premise that such products are "100% Natural."

5. Defendants' conduct constitutes unfair and deceptive acts and practices in the conduct of trade and commerce and violates Massachusetts General Laws Chapter 93A. Accordingly, Plaintiff seeks, on behalf of herself and other Massachusetts consumers, to recover damages, including statutory and multiple damages, interest, attorneys' fees, costs, and any and all other relief permitted by law.

## Parties

6. Plaintiff Margaret Lee is a resident of Brookline, Massachusetts.

7. Defendant ConAgra is a Delaware corporation with its principal place of business in Chicago, Illinois.

8.  Defendant Roche Bros. Supermarkets, Inc. is a Massachusetts corporation with its principal place of business in Wellesley, Massachusetts.

9.  Defendant Roche Bros. Inc. is a Massachusetts corporation with its principal place of business in Wellesley, Massachusetts.

10. Defendant Roche Bros. Supermarkets, LLC is a Delaware corporation with its principal place of business in Wellesley, Massachusetts.

11. Collectively, Defendants Roche Bros. Supermarkets, Inc., Roche Bros. Inc. and Roche Bros. Supermarkets, LLC are referred to as "Roche Bros." Roche Bros. operates 20 stores.

12. Defendant Stop & Shop is a Delaware corporation with its principal place of business in Quincy, Massachusetts that operates numerous stores throughout New England, including in Massachusetts.

## Jurisdiction

13. The exercise of personal jurisdiction over Defendants is proper pursuant to Mass. Gen. Laws Ch. 223A, § 3 because, *inter alia*, Plaintiff's claims arise out of Defendants' regular transaction of business in Massachusetts.

## Factual Allegations

14. ConAgra is a packaged food company that manufactures and distributes products such as Wesson Oil throughout the United States, including through grocery stores in Massachusetts such as Roche Bros. and Stop & Shop stores.

15. Plaintiff purchased bottles of Wesson Vegetable Oil from Roche Bros. and Stop & Shop stores in Massachusetts on multiple occasions.

16. The bottles stated prominently in large print on the front of the label, as well as on the back of the label, that they were "Pure and 100% Natural." Nowhere did the labels disclose that Wesson Oil contains GMOs. A picture of one of the bottles purchased by Plaintiff is below.

3



17. ConAgra systematically labels and markets every bottle of Wesson Oil as "Pure and 100% Natural" in product packaging, print advertisements, in television commercials, and on the Wesson Oils website (www.wessonoil.com).

18. Roche Bros. and Stop & Shop sell bottles of Wesson Oil bearing such labels in stores.

19. Imagery on the labels of bottles of Wesson Oil, such as a picture of the sun surrounding the word "Wesson," serves to reinforce the message that Wesson Oil is purportedly 100% Natural.

4

20. Whether products such as Wesson Oil are in fact "100% Natural," and whether such products contain unnatural GMOs, is important to a reasonable consumer.

21. The importance to a reasonable consumer of a claim that a product such as Wesson Oil is "100% Natural" is demonstrated, *inter alia*, by Defendants' extensive effort to label, market and sell Wesson Oil as "100% Natural."

22. Plaintiff read the front label of the bottles and believed that Wesson Oil was in fact 100% Natural.

23. After using Wesson Oil, Plaintiff learned that, contrary to the representations in large print on the front of the bottle, the product contains unnatural ingredients and therefore it is not "100% Natural."

24. Specifically, Plaintiff learned that Wesson Oil is made from plants, the DNA of which had been deliberately altered by the forced introduction of DNA from other species. The plants therefore had specific traits, such as resistance to certain herbicides, which they do not possess in nature or through traditional cross-breeding methods. Plants and other life forms that are products of this process of unnatural DNA alteration are commonly referred to as genetically modified organisms, or "GMOs."

25. GMOs are not natural at all, let alone "100% Natural." In a May 2014 article on "Food Safety" entitled "Frequently asked questions on genetically modified foods," for example, the World Health Organization stated as follows:

> Genetically modified organisms (GMOs) can be defined as organisms (i.e. plants, animals or microorganisms) in which the genetic material (DNA) has been altered in a way ***that does not occur naturally by mating*** and/or natural recombination. The technology is often called "modern biotechnology" or "gene technology", sometimes also "recombinant DNA technology" or "genetic engineering". It allows selected individual genes to be transferred from one organism into another, also between nonrelated species. Foods produced from or using GM organisms are often referred to as GM foods.

http://www.who.int/foodsafety/areas_work/food-technology/faq-genetically-modified-food/en/ (emphasis added) (last visited April 4, 2017).

26. Numerous sources confirm that GMOs are not "natural" and do not occur naturally. *See, e.g.*, European Commission, "Genetically Modified Organisms," last updated April 4, 2017, http://ec.europa.eu/food/plant/gmo_en (distinguishing between "naturally occurring variations" in plant and animal genetic makeup with genetic material that is "modified artificially"); G. Tyler Miller and Scott Spoolman, Cengage Learning, *Environmental Science*, Fifteenth Edition, 2016. ("Engineers use a process called gene splicing to alter an organism's genetic material through adding, deleting, or changing segments of its DNA. The goal of this process is to add desirable traits or to eliminate undesirable ones by enabling scientists to transfer genes between different species that would not normally interbreed in nature. The resulting organisms are called genetically modified organisms (GMOs)."); and Chelsea Powell, Harvard University Graduate School of Arts and Sciences, "Special Edition on GMOs: How to Make a GMO," August 9, 2015, http://sitn.hms.harvard.edu/flash/2015/how-to-make-a-gmo/ ("Genetically modified organisms (GMOs) are organisms that have been altered using genetic engineering methods . . . . The key steps involved in genetic engineering are identifying a trait of interest, isolating that trait, inserting that trait into a desired organism, and then propagating that organism . . . . Genetic engineering is a term used to describe biotechnological methods used by scientists to directly manipulate an organism's genome.").

27. Wesson Oils are made from GMOs, including genetically modified rapeseed (canola oil), soybeans and corn.

28. The prominent labeling on the front of the bottle representing the product was "100% Natural" is therefore false and misleading.

29.     Plaintiff has been injured, economically and otherwise, by the misrepresentations that the oil she purchased was 100% Natural, including because she paid for but did not receive a product that was actually 100% Natural. Plaintiff would not have purchased Wesson Oil had she known it contained GMOs and was not 100% Natural.

## Class Action Allegations

30.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

31.     Plaintiff brings this action pursuant to Massachusetts Rule of Civil Procedure 23 and Chapter 93A, Section 9(2) on behalf of herself and a Class consisting of:

> All persons who have purchased Wesson Oil products in Massachusetts that were labeled "100% Natural."

32.     Plaintiff reserves the right to amend the definition of the Class.

33.     This action is properly maintainable as a class action.

34.     The members of the Class are thus so numerous that joinder of all members is impractical.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Wesson Oil products were sold with the label "100% Natural";

(b)     Whether the products so labeled in fact were 100% Natural;

(c)     Whether, how, and when Defendants disclosed that Wesson Oil contained GMOs.

(d)     Whether Defendants' conduct alleged herein constituted unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, Section 2; and

(e)     The proper measure of damages.

36. Plaintiff's claims are typical of the claims of the members of the Class because, like Plaintiff, each Class member purchased Wesson Oil products that were mislabeled as alleged herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting consumer class actions and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff does not have any interest adverse to the Class.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not substantial, and the expense and burden of individual litigation would make it impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

39. The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to the individual Class members which could establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

40. The members of the Class are readily identifiable through Defendants' and other records, and Plaintiff is a member of the Class.

41. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

(Violation of Chapter 93A)

42. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

43. At all relevant times, Defendants were engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of selling, or causing to be sold, the Wesson Oil products at issue within the Commonwealth of Massachusetts.

44. By conducting the unfair and deceptive branding efforts described above, Defendants have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, Section 2.

45. Moreover, by engaging in the conduct described above, Defendants violated at least the following General Regulations of the Massachusetts Attorney General:

   a. 940 C.M.R. 3.02(2), which states:

   > No statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another.

   b. 940 C.M.R. 3.05(1), which states:

   > No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof.

   c. 940 C.M.R. 3.16(1)-(2), which make any act or practice a violation of Chapter 93A, Section 2 (and thus Section 9) if:

9

> (1) It is oppressive or otherwise unconscionable in any respect; or
>
> (2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . .

d. 940 C.M.R. 6.03(2), which states:

> Sellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell.[1]

e. 940 C.M.R. 6.04(1)-(2), which state:

> (1) Misleading Representations. It is an unfair or deceptive act for a seller to make any material representation of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading, or if the seller does not have sufficient information upon which a reasonable belief in the truth of the material representation could be based.
>
> (2) Disclosure of Material Representations. It is an unfair or deceptive act for a seller to fail to clearly and conspicuously disclose in any advertisement any material representation, the omission of which would have the tendency or capacity to mislead reasonable buyers or prospective buyers . . . .

46. Further, Defendants' violation of the regulations enumerated above constitute violations of Chapter 93A, Section 2(a) because regulations promulgated by the Massachusetts Attorney General under Chapter 93A, Section 2(c) provide that any act or practice violates Chapter 93A, Section 2 if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ." 940 C.M.R. 3.16(3).

47. The violations of Chapter 93A by Defendants as described herein were done willfully, knowingly, and in bad faith.

---

[1] "An unfair or deceptive representation may result not only from direct representations and the reasonable inferences they create, but from the seller's omitting or obscuring a material fact." 940 C.M.R. 6.03(4).

48. As a direct and proximate result of Defendants' conduct, Plaintiff and the members of the Class were harmed.

49. Plaintiff sent Defendant ConAgra written demand for relief pursuant to Chapter 93A, Section 9, identifying the claimant and reasonably describing the unfair acts or practices relied upon and the injuries suffered, on February 16, 2017 and sent the same type of written demand to Defendants Roche Bros. and Stop & Shop on February 21, 2017. None of the Defendants responded to Plaintiff's demand.

50. As a result of Defendants' violation of Chapter 93A, Defendants are liable to Plaintiff and the Class for up to three times the damages that Plaintiff and the Class incurred, or at the very least the statutory minimum award of $25 per purchase of a Wesson Oil product as alleged herein, together with all related court costs, attorneys' fees, and interest.

### Prayers for Relief

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

1. Allowing this action to proceed as a class action under Massachusetts Rule of Civil Procedure 23 and Chapter 93A, Section 9(2);

2. Awarding Plaintiff and members of the Class monetary damages;

3. Awarding Plaintiff and members of the Class up to three times their damages, or in the alternative statutory damages, together with interest and costs;

4. Awarding counsel for the Plaintiff and the Class their reasonable attorneys' fees and expenses;

5. Enjoining Defendants from using false and deceptive marketing, branding, and labeling as described herein; and

6. Awarding such other and further relief which the Court finds just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 26, 2017

By her attorneys,

Thomas G. Shapiro (BBO # 454680)
Ian J. McLoughlin (BBO # 647203)
**SHAPIRO HABER & URMY LLP**
Seaport East
Two Seaport Lane, Floor 6
Boston, MA 02210
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
tshapiro@shulaw.com
imcloughlin@shulaw.com

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. 17-1278 | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| **PLAINTIFF(S)** Margaret Lee, On behalf of herself and all others similarly situated. | | **DEFENDANT(S)** ConAgra Foods, Inc., Roche Bros. Supermarkets, Inc., Roche Bros. Inc., Roche Bros. Supermarkets, LLC and The Stop & Shop Supermarket Company LLC. |
| **ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** Board of Bar Overseers number Ian J. McLoughlin, Esq. BBO # 647203 Shapiro Haber & Urmy LLP Seaport East, 2 Seaport Lane, Boston, MA 02210    (617) 439-3939 | | **ATTORNEY (if known)** |
| Origin Code Original Complaint | | |

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE?
_____ (B) (X) Yes ( ) No
Code No: BH2; BK 1
Type of Action: Unfair trade practices involving complex issues; Consumer matters involving complex issues

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This case warrants inclusion into the Business Litigation Session because it falls within two categories of cases accepted into the BLS: Claims of unfair trade practices and consumer matters involving complex issues.

This case is a consumer class action against ConAgra Foods, Inc. ("ConAgra"); Roche Bros. Supermarkets, Inc., Roche Bros. Inc., and Roche Bros. Supermarkets, LLC (collectively, "Roche Bros."); and The Stop & Shop Supermarket Company LLC ("Stop & Shop") on behalf of Margaret Lee and other persons who purchased Wesson Oil products in Massachusetts. Defendant ConAgra manufactures and distributes packaged food products, including Wesson brand cooking oils such as Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend ("Wesson Oil"). Defendants Roche Bros. and Stop & Shop sell Wesson Oil in stores across Massachusetts. Ms. Lee claims that Defendants have committed unfair and deceptive acts and practices in the conduct of trade and commerce in violation of Massachusetts General Laws Chapter 93A by deceiving their customers, including Ms. Lee and numerous other consumers in Massachusetts, by mislabeling its Wesson Oil products.

Specifically, the label on the front of the bottles of Wesson Oil represents that it is "Pure and 100% Natural." Contrary to the representations in large print on the front of the bottle, however, the product contains unnatural ingredients and therefore is not "100% Natural." In particular, Wesson Oil is made from plants, the DNA of which had been deliberately altered by the forced introduction of DNA from other species. The plants therefore had specific traits, such as resistance to certain herbicides, which they do not possess in nature or through traditional cross-breeding methods. Plants and other life forms that are products of this process of unnatural DNA alteration are referred to as genetically modified organisms, or "GMOs." Accordingly, contrary to Defendants' representations, Wesson Oil is not "100% Natural."

Defendants have been misrepresenting Wesson Oil and deceiving their customers, including Ms. Lee and numerous other consumers. Defendants have injured Plaintiff and other consumers in Massachusetts by inducing them to purchase and consume unnatural products on the false premise that such products are "100% Natural." Defendants conduct constitutes unfair and deceptive acts and practices in the conduct of trade and commerce and violates Massachusetts General Laws Chapter 93A.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: 4/26/17

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: **SUCV2017-01278-BLS2**

Case: Lee v. ConAgra Foods, Inc. et al.

### NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS2**.

Hereafter, as shown above, all parties must include the initials "**BLS2**" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the appropriate BLS Session Clerk at Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel. Before the Rule 16 Conference, counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Project on Discovery (counsel are directed to http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html for description of the Project). Counsel may indicate their respective client's participation by completing, filing and serving the attached form. If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated: _4/27/17_

Janet L. Sanders
Justice of the Superior Court &
Administrative Justice of the Business Litigation Session

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: _____

Case: _____

As you may know, the Business Litigation Session began implementing a Discovery Project in January, 2010. This project is available on a voluntary basis for all new cases accepted into the BLS and for cases which have not previously had an initial case management conference. Counsel should be prepared to discuss the project with the Court at the initial case management conference. For a detailed copy of the BLS Discovery Project, counsel are directed to the Trial Court home page at:
http://www.mass.gov/courts/court-info/trial-court/sc/sc-bls-gen.html)

If a party is willing to participate in the project, that party's counsel should so indicate below and return this form to the appropriate session clerk.

☐ **Yes,** _____ is willing to participate in the Discovery Project.
       (Party's Name)

Case Name _____

Docket Number CIVIL DOCKET#: _____

Counsel For _____     Date _____

Firm Name and Address:

_____

_____

_____

Please complete this form and return it to:

Helen Foley, Asst. Clerk     **OR**     Richard V. Muscato, Jr., Asst. Clerk
BLS1, Room 1309                          BLS2, Room 1017
3 Pemberton Square                       3 Pemberton Square
Boston, MA 02108                         Boston, MA 02108

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT, SUFFOLK COUNTY

MARGARET LEE, On Behalf of Herself )
and All Others Similarly Situated, )
 )
    Plaintiff, )
 )
 ) Civil Action No. 17-1278
v. )
 )
CONAGRA FOODS, INC., ROCHE BROS. )
SUPERMARKETS, INC., ROCHE BROS. )
INC., ROCHE BROS. SUPERMARKETS, )
LLC AND THE STOP & SHOP )
SUPERMARKET COMPANY LLC, )
 )
    Defendants. )

RECEIVED MAY 31 2017 SUPERIOR COURT-CIVIL MICHAEL J. DONOVAN CLERK/MAGISTRATE

## STIPULATION AND [PROPOSED] ORDER REGARDING TIME FOR DEFENDANTS TO RESPOND TO COMPLAINT

It is hereby stipulated, subject to the approval of the Court, as follows:

WHEREAS, Plaintiff Margaret Lee filed her Complaint on April 26, 2017;

WHEREAS, the undersigned counsel for Defendant Conagra Brands, Inc., agreed to accept service only on behalf of Conagra Brands, Inc., on May 8, 2017 upon express agreement with plaintiff counsel that parties would agree to a coordinated schedule for Conagra Brands, Inc. to answer or otherwise respond to the Complaint following service of the codefendants;

WHEREAS, Defendants Roche Bros. Supermarkets, Inc., Roche Bros. Inc., Roche Bros. Supermarkets LLC (collectively "Roche Bros.") were served with process on May 11, 2017;

WHEREAS, Defendant The Stop & Shop Supermarket Company LLC, was served with process on May 15, 2017;

WHEREAS, this request for an enlargement of time to answer or otherwise respond to the Complaint is made before the expiration of the period originally prescribed for any defendant to respond;

WHEREAS, counsel for the parties have agreed upon a schedule for Defendants Conagra Brands, Inc., Roche Bros., and The Stop and Shop Supermarket Company LLC (collectively "Defendants") to answer or otherwise respond to the Complaint;

NOW THEREFORE, it is agreed, subject to the Court's approval, that:

1. The deadline for all Defendants to answer or otherwise respond to the Complaint is June 9, 2017.

Dated: May 31, 2017

_____
Ian J. McLoughlin, BBO# 647203
SHAPIRO HABER & URMY, LLP
2 Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
imcloughlin@shulaw.com

*Counsel for Plaintiffs*

_____
Kevin M. Duddlesten, BBO# 680624
McGUIREWOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Telephone:   (214) 932-6419
Facsimile:   (214) 273-7484
kduddlesten@mcguirewoods.com

*Counsel for Defendants*

IT IS SO ORDERED:

_____
Associate Justice of the Superior Court

Dated: _____



COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT, SUFFOLK COUNTY

MARGARET LEE, On Behalf of Herself )
and All Others Similarly Situated, )
)
Plaintiff, )
) Civil Action No. 17-1278
v. )
)
CONAGRA FOODS, INC., ROCHE BROS. )
SUPERMARKETS, INC., ROCHE BROS. )
INC., ROCHE BROS. SUPERMARKETS, )
LLC AND THE STOP & SHOP )
SUPERMARKET COMPANY LLC, )
)
Defendants. )

**STIPULATION AND [PROPOSED] ORDER REGARDING
TIME FOR DEFENDANTS TO RESPOND TO COMPLAINT**

It is hereby stipulated, subject to the approval of the Court, as follows:

WHEREAS, Plaintiff Margaret Lee filed her Complaint on April 26, 2017;

WHEREAS, the undersigned counsel for Defendant Conagra Brands, Inc., agreed to accept service only on behalf of Conagra Brands, Inc., on May 8, 2017 upon express agreement with plaintiff counsel that parties would agree to a coordinated schedule for Conagra Brands, Inc. to answer or otherwise respond to the Complaint following service of the codefendants;

WHEREAS, Defendants Roche Bros. Supermarkets, Inc., Roche Bros. Inc., Roche Bros. Supermarkets LLC (collectively "Roche Bros.") were served with process on May 11, 2017;

WHEREAS, Defendant The Stop & Shop Supermarket Company LLC, was served with process on May 15, 2017;